# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Matthew M. Pepe,                                    Civil No. 10-336 (DWF / FLN)

        Plaintiff,

   v.                                              <u>REPORT AND</u>
                                  <u>RECOMMENDATION</u>

Michael J. Astrue,
Commissioner of Social Security,

        Defendant.

---

Frank W. Levin, 331 Second Ave. South, Suite 420, Minneapolis, MN 55401, for Plaintiff.

Lonnie F. Bryan, Asst. United States Attorney, 600 United States Courthouse, 300 South Fourth Street, Minneapolis, MN 55415; Donna L. Calvert, Office of the Regional Chief Counsel, Social Security Administration, and Catherine A. Seagle, Asst. Regional Counsel, Social Security Administration (Of Counsel), for Commissioner.

---

FRANKLIN L. NOEL, United States Magistrate Judge

This matter comes before the undersigned United States Magistrate Judge on the parties' cross motions for summary judgment (Doc. Nos. 13, 24). This matter has been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1) and District of Minnesota Local Rule 72.1(b). Pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), Plaintiff Matthew M. Pepe ("Plaintiff" or "Claimant") seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner").

The Commissioner ruled that Plaintiff was not entitled to a period of disability, and therefore not entitled to disability insurance benefits (DIB) or supplemental security income (SSI) under the Social Security Act. For the reasons stated below, the Court recommends granting Plaintiff's motion for summary judgment, denying the Commissioner's motion for summary judgment, and remanding the action to the Social Security Administration.

# I.    FACTUAL AND PROCEDURAL BACKGROUND

## A.    Procedural History

In March 2006, Plaintiff filed applications for DIB and SSI under the Social Security Act, 42 U.S.C. §§ 416, 423 & 1382c.[1]  He claimed that he had become disabled on December 31, 2001, due to anxiety and depression.  (Admin. R. at 31, 92-100.)  His applications were denied, both initially and upon reconsideration.

Plaintiff received a hearing before an Administrative Law Judge ("ALJ") on October 20, 2008.  On February 4, 2009, the ALJ found that he was not disabled because while he was "under a disability," his "substance use disorders" were a "contributing factor material to the determination of disability.  Accordingly, the claimant has not been disabled" under the statute during the relevant time-frame.  (Id. at 16.)  Thus he was not entitled to benefits under Titles II and XVI of the Social Security Act.

In October 2009, the Appeals Council denied his request for review.  (Id. at 1-3.) Accordingly, the ALJ's decision became the Commissioner's final decision.  20 C.F.R. §§ 404.981, 416.1481.  This Court therefore has jurisdiction to review that final decision.  42 U.S.C. §§ 405(g), 1383(c)(3).  Plaintiff now seeks to have this matter remanded for further proceedings. (Doc. No. 14, at 24.)

## B.    Statement of Facts

Plaintiff originally alleged he became disabled  in December 2001 when he was 28 years old.  (See Admin. R. at 92, 98.)  He was 35 years old when the ALJ issued his decision in February 2009.  Plaintiff graduated from high school and attended college, where he studied

---

[1]    He apparently also had filed applications in September 2005 seeking the same benefits and alleging the same onset date.  The ALJ references the earlier applications.  (Admin. R. at 15.)

psychology and computer science.  He earned certification in the computer industry and worked
as a computer network design technician.  (Admin. R. at 30, 42, 129, 134.)

###     C.      The ALJ's Decision and Findings

The ALJ issued a ten-page decision, following the five-step sequential analysis outlined
by the Secretary of Health and Human Services.[2]  The ALJ first found that Plaintiff "has not
engaged in substantial gainful activity since December 31, 2001, the alleged onset date."
(Admin. R. at 18.)  With respect to the second step, the ALJ found that Claimant "has the
following severe impairments: depression and anxiety and chemically dependence [sic] with a
past history of heroin, cocaine and alcohol abuse."  (Id.)  Turning to the third step, the ALJ found
that he "does not have an impairment or combination of impairments that meets or medically
equals one of the listed impairments."  (Id.)  The ALJ explained that he has no severe physical
impairments but that "he is subject to mental impairments."  (Id.)

With respect to such impairments, the ALJ first noted that the "State Agency Medical
Consultants found no severe impairments" initially.  (Id.)  The ALJ also noted that Claimant
failed to appear at a psychological evaluation scheduled for June 30, 2006 by the state examiner
in order to develop the record fully.  (Id.)  The ALJ further noted that state examiners again
found no severe impairments at the reconsideration level based in part on a consultative
evaluation with a psychiatrist, Alford Karayusuf, M.D.  (Id.)  The state consultants found only
mild functional limitations and no severe impairments.  (Id. at 19.)

---

        [2]       The analysis essentially asks (1) whether the claimant is presently engaged in
substantial gainful activity, (2) whether he has a severe impairment, (3) whether he has a
presumptively disabling impairment as listed in the regulations, (4) whether he has the residual
functional capacity to perform his past work, and (5) if he cannot perform such work, whether
there are other jobs in the national economy that he can perform.  E.g., Kelley v. Callahan, 133
F.3d 583, 587-88 (8th Cir. 1998).

The ALJ then noted that "[t]o assist in the evaluation of the claimant's mental impairments, [he] has requested psychologist [sic], Mary Louise Stevens, Ph.D., to appear and testify as a neutral medical expert." (Id.) Dr. Stevens "reported that the claimant has no restriction in the activities of daily living," "moderate difficulties" in social functioning, and "mild difficulties" with "concentration, persistence or pace." (Id.) In addition, there were no episodes of decompensation and no evidence that the "paragraph C" criteria would be satisfied. (Id.) Finally, the remaining limitations failed to satisfy "the 'paragraph B' and 'paragraph C' criteria." (Id.) Dr. Stevens thus "opined that the claimant's mental impairments do not cause listing level functional limitations, but would limit him to semi-skilled work or higher with brief and superficial contact with others in an environment free of controlled substances." (Id.)

The ALJ gave "greatest weight" to her opinion and adopted her conclusion, "because she has medical expertise in the treatment and care of mental conditions and she has knowledge of the disability program and she had the opportunity to review the objective medical evidence and hear the testimony of the claimant." (Id.) The ALJ thus concluded that Claimant "has no functional limitations except for moderate limitations in social functioning" and that his "mental impairments do not rise to listing level." (Id.)

The ALJ found that Claimant "lives independently and is able to manage his self-care needs and complete his household chores." (Id.)

> He is able to shop, prepare meals, drive and do his household chores. He enjoys watching television and using the computer. He reported that he looks for jobs on the computer. The fact that the claimant is looking for a job, indicates that he does not consider himself to be totally disabled and unable to perform all jobs.

(Id. at 19-20.)

Accordingly, the ALJ turned to determining Claimant's residual functional capacity ("RFC"). (Id. at 20.) The ALJ explained that he considered whether all of the claimed

symptoms were consistent with the objective medical and other evidence and that he considered opinion evidence in accordance with the requirements of various regulations and Social Security Rulings.  (Id. at 20.)  Noting the two-step process he was obligated to follow–first, to determine any impairments that could reasonably be expected to produce Claimant's symptoms, and second, to determine the extent to which they limit his ability to do basic work activities–the ALJ explained that "whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence," he must "make a finding on the credibility of the statements based on a consideration of the entire case record."  (Id.)

Here, the ALJ found Plaintiff to be not disabled because he possessed a residual functional capacity for semi-skilled to skilled work tasks with brief and superficial contact with others.  (Id.)  The ALJ noted that Claimant "asserts an inability to perform all work due to depression and anxiety."  (Id.)  But the ALJ seemed to reject Claimant's assertion that he experienced anxiety while working and was often tardy, noting that Claimant "was abusing chemicals during the periods he worked gainfully."  (Id.)

The ALJ then found that while "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms," his "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment."  (Id. at 21.)

The ALJ found that the "objective medical evidence and treatment record is inconsistent with either impairments of such severity or symptoms of any intensity, frequency, or duration, which would require greater residual functional capacity reductions.  The medical opinions of record are inconsistent with a conclusion of disability."  (Id.)  The ALJ noted that the "medical

expert stated that [Claimant's treating physician,] Dr. [Ali] Ebrahimi[,] reported that the claimant

had marked functional problems in many areas, but noted that if he sustained sobriety he was

capable of semi-skilled or higher level work tasks." (Id.)

Although the ALJ had concluded that he would accord the greatest weight to the opinion

of the psychologist he retained as a neutral medical expert, the ALJ did not expressly address the

weight, if any, he was according to Dr. Ebrahimi's opinion. Dr. Ebrahimi, who became

Claimant's treating physician in early 2007, had concluded on March 19, 2007 that Claimant

suffered from "Major Depressive Disorder–Recurrent, Chronic with Anxious Features."

(Admin. R. at 378.) Dr. Ebrahimi's assessment of "Major Depressive Disorder, Recurrent" on

April 27, 2007 continued over several "Medication Checks" through October 5, 2007. (Id. at

374, 375, & 376.) On January 21, 2008, Dr. Ebrahimi's assessment changed to "History of

Generalized Anxiety Disorder," a diagnosis that continued over several "Medication Checks"

through September 15, 2008. (Id. at 370, 371, 372 & 373.)

The ALJ further observed that the January 2006 psychiatric evaluation by Dr. Karayusuf

disclosed

> only mild functional difficulties associated with his mental condition. Dr.
> Karayusuf opined that [Claimant] would be able to understand, retain and follow
> simple instructions with work that involves brief superficial interactions with
> others and he would be able to maintain pace and persistence.

(Id. at 21.) While the ALJ incorporated Dr. Karayusuf's recommendation to limit Claimant to

brief and superficial interactions, the ALJ rejected, based on the medical expert's report, any

limitation to "unskilled, simple tasks, because he has a college education in computer science

and uses the computer daily with no to mild difficulties maintaining concentration, pace and

persistence." (Id.)

Furthermore, the ALJ, noting that Claimant "has had numerous jobs since December 31,

2001, which shows an ability to work," concluded that "[h]e seems to be relying on getting disability benefits instead of improving his lifestyle and looking for gainful work." (Id. at 22.) "The claimant's anticipation of the receipt of disability benefits and the receipt of public assistance may constitute economic disincentives for the claimant to return to work." (Id.)  In sum, the ALJ was

> not persuaded that the claimant is unable to work fulltime or at sustained gainful levels due to the fact that he has shown an ability to work since the date of onset, and his daily activities are inconsistent with total disability and his treatment has been conservative and generally successful and the objective medical evidence does not support a finding of disability.

(Id.)

After finding that Claimant "would be unable to perform past relevant work," that he "has at least a high school education," and that "transferability of job skills is not material," the ALJ concluded that "there would be a significant number of jobs in the national economy that the claimant could perform." (Id. at 23.)  The ALJ explained that the "claimant's ability to work at all exertional levels would be compromised by nonexertional limitations." (Id.)  Nevertheless, the vocational expert testified that Claimant "would be able to perform the requirements of representative occupations such as 19,000 to 20,000 janitor jobs in the State of Minnesota." (Id.)  Based on this testimony, the ALJ concluded that "the claimant would be capable of making a successful adjustment to work that exists in significant numbers in the national economy." (Id.) The ALJ rejected, however, any adjustment of the RFC based on the vocational expert's testimony that absenteeism of more than two days per month would render Claimant not "competitively employable." (Id.)  The ALJ explained that "the conservative and successful medical treatment with ongoing sobriety does not support this significant reduction." (Id. at 24.) Accordingly, the ALJ concluded that "the claimant has not been disabled . . . at any time from

the alleged onset date through the date of this decision."  (Id.)

After the Appeals Council denied his request for review, Plaintiff then sought judicial review of the ALJ's decision in this Court.

## II.    DISCUSSION

### A.    Standard of Review

The findings of the Commissioner are conclusive if they are supported by "substantial evidence."  42 U.S.C. § 405(g).  This Court's review of the Commissioner's final decision is deferential as that decision is reviewed "only to ensure that it is supported by 'substantial evidence in the record as a whole.'"  Hensley v. Barnhart, 352 F.3d 353, 355 (8th Cir. 2003). This Court's task is confined to reviewing "the record for legal error and to ensure that the factual findings are supported by substantial evidence."  Id.

The applicable "substantial evidence in the record as a whole" standard does not require a preponderance of the evidence, but rather only "enough so that a reasonable mind could find it adequate to support the decision."  Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).  But this Court must "consider evidence that detracts from the Commissioner's decision as well as evidence that supports it."  Burnside v. Apfel, 223 F.3d 840, 843 (8th Cir. 2000).  Thus, a "notable difference exists between 'substantial evidence' and 'substantial evidence on the record as a whole.'"  Wilson v. Sullivan, 886 F.2d 172, 175 (8th Cir. 1989) (internal citation omitted).

> "Substantial evidence" is merely such "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  "Substantial evidence on the record as a whole," however, requires a more scrutinizing analysis.  In the review of an administrative decision, "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."  Thus, the court must also take into consideration the weight of the evidence in the record and apply a balancing test to evidence which is contradictory.

Id. (internal citation omitted).

Nevertheless, this Court cannot reverse "merely because the evidence is capable of supporting the opposite conclusion." Hensley v. Barnhart, 352 F.3d 353, 355 (8th Cir. 2003). Thus, if the record permits one to draw two inconsistent positions and one of those represents the Commissioner's findings, this Court must affirm. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001). This Court's task "is not to reweigh the evidence, and [the Court] may not reverse the Commissioner's decision merely because substantial evidence would have supported an opposite conclusion or merely because [the Court] would have decided the case differently." Harwood v. Apfel, 186 F.3d 1039, 1042 (8th Cir. 1999). And because "[t]he ALJ is in the best position to determine the credibility of the testimony," this Court usually defers to the ALJ's decisions on credibility. Johnson v. Apfel, 240 F.3d 1145, 1147 (8th Cir. 2001).

**B.     Entitlement to Disability Benefits Under the Social Security Act**

Plaintiff is entitled to disability benefits if he suffers from a "disability." The Social Security Act generally defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1).

To determine the existence of a disability under the Act, the Administration engages in a "five-step sequential evaluation process" in which a claimant can be found not disabled at any of the five steps: (1) if the claimant is "doing substantial gainful activity," he is not disabled; (2) if the claimant does "not have a severe medically determinable physical or mental impairment" meeting certain durational requirements, he is not disabled; (3) if the claimant has an impairment of a certain specified severity, he is conclusively disabled; (4) but if the claimant has a residual functional capacity such that she can still do his "past relevant work," he is not disabled; and (5)

if the claimant "can make an adjustment to other work," based on her residual functional capacity, age, education and work experience, he is not disabled. 20 C.F.R. § 404.1520(a)(4).

Generally, the claimant has the burden to prove that she is disabled. 20 C.F.R. § 404.1512(a). The Administration has clarified the respective burdens of production and of persuasion with respect to each of the five steps. 68 Fed. Reg. 51153 (Aug. 26, 2003) (stating rules are effective September 25, 2003). The claimant bears the "dual burdens of production and persuasion through step 4 of the sequential evaluation process." Id. at 51155. Thus, "[t]he burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five." Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004).

Where a claimant has a history of substance abuse, an additional analysis is required. Generally, substance abuse precludes an award of benefits for being disabled if such abuse is a "contributing factor" to a determination of disability. 42 U.S.C. § 423(d)(2)(C) ("An individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled."). If a claimant is found to be disabled and there is medical evidence of drug addiction or alcoholism, the Commissioner must then determine whether that substance abuse is a contributing factor material to the finding of disability. 20 C.F.R. § 404.1535(a). Essentially, drug addiction or alcoholism is such a "contributing factor" under the statute if the claimant would not still be found "disabled" if he stopped using drugs or alcohol. Id. § 404.1535(b). The claimant bears the burden of proving that such drug addiction or alcoholism was not a contributing factor. Brueggemann v. Barnhart, 348 F.3d 689, 693 (8th Cir. 2003).

On appeal to this Court, Plaintiff does not dispute the ALJ's findings regarding the first three steps of the sequential evaluation. (Doc. No. 14, at 13.) But Plaintiff does argue that the ALJ's finding of his residual functional capacity is not based on substantial evidence. (Id.) In particular, Plaintiff contends that: (1) the ALJ's decision was based "mainly on the opinion of a non-treating, non-examining [Medical Expert], Dr. Stevens"; (2) the ALJ failed to fully and fairly develop the record by not contacting Claimant's "treating doctor for additional information concerning [his] residual functional capacity and chemical dependency issues or lack thereof," or at least by asking Claimant's representative to do so; (3) the hypothetical question posed to the vocational expert was therefore incapable of producing testimony that could constitute substantial evidence; and (4) the ALJ misapplied the law regarding substance abuse. (Doc. No. 14, at 13-23.) Accordingly, Claimant requests a remand for further proceedings. (Id. at 24.)

As the key issue concerns the ALJ's handling of Claimant's substance abuse history, the Court will address these issues in a somewhat different order.

## C. The ALJ Failed To Follow The Requisite Procedure Where A Claimant Has A History Of Substance Abuse

There is no dispute that Claimant has a history of substance abuse. Accordingly, the usual analytic framework is somewhat modified. The relevant procedure is dictated by statute, regulation and Eighth Circuit precedents. See Brueggemann v. Barnhart, 348 F.3d 689, 693-94 (8th Cir. 2003) (citing 42 U.S.C. § 423(d)(2)(C) and further noting that the "Commissioner has duly promulgated regulations in this area, which the ALJ may not silently disregard"). First, the ALJ must employ "the standard five-step approach" of 20 C.F.R. § 404.1520 and make a determination of disability "without segregating out any effects of substance use disorders." Brueggemann, 348 F.3d at 694. In other words, the ALJ "must base this disability determination on substantial evidence of [the claimant's] medical limitations without deductions for the

11

assumed effect of substance use disorders" because the inquiry at this point "concerns strictly symptoms, not causes, and the rules for how to weigh evidence of symptoms remain well established." Id.

The procedure for assessing claims of disability that are based, at least in part, on substance addiction disorders, is somewhat unique because "[u]nlike other sections of disorders in the list of impairments," the section governing substance addiction disorders "does not have its own set of requirements." Pettit v. Apfel, 218 F.3d 901, 902 (8th Cir. 2000). Rather, to meet the requirements for that section, the substance addiction must result "in at least one of a number of other specified listings." Id. "The required level of severity" for substance abuse disorders "is met when the requirements" are satisfied in any of four specified mental impairments or five physical impairments. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.09. For example, a claimant may meet the requirements for alcohol abuse because it results in depression that meets the requirements for that impairment under section 12.04 of the listings. See Pettit, 218 F.3d at 902.

Second, "[i]f the gross total of a claimant's limitations, including the effects of substance use disorders, suffices to show disability, then the ALJ must next consider which limitations would remain when the effect of the substance use disorders are absent." Brueggemann, 348 F.3d at 694-95. Moreover, if "the claimant is actively abusing alcohol or drugs, this determination will necessarily be hypothetical and therefore more difficult than the same task when the claimant has stopped." Id. at 695 (further stating that ALJ "must develop a full and fair record and support his conclusion with substantial evidence on this point just as he would on any other").

Third,

[o]nly after the ALJ has made an initial determination 1) that [the claimant] is disabled, 2) that drug or alcohol use is a concern, and 3) that substantial evidence

on the record shows what limitations would remain in the absence of alcoholism or drug addiction, may he then reach a conclusion on whether [the claimant's] substance use disorders are a contributing factor material to the determination of disability.

Id. Failure to follow this procedure can constitute legal error. Id.

Here, the issue whether the ALJ properly applied the requisite procedure is further complicated by the fact that Claimant requested, after the hearing, that his onset date be amended to a time that otherwise would have been within the originally-alleged period of disability. He thus argues that the ALJ erred, first, by not amending the disability "onset date to March 2007 as proposed by [Claimant's] counsel subsequent to the hearing," and second, by failing to engage in the requisite substance abuse analysis under 20 C.F.R. § 404.1535. (Doc. No. 14, at 20-21.)

### 1. Amendment of Disability Onset Date

With respect to the onset date, Claimant argues that the correct date "should be March 2007–the time when [he] began seeing Dr. Ebrahimi and stopped using according to his testimony." (Id. at 21.) Claimant notes that on November 10, 2008, a few weeks after the October 20, 2008 hearing, he "requested an amended onset date of March 1, 2007," but contends that the ALJ "did not provide reasons in his decision as to why he did not amend the onset date." (Id. at 2, 20.)

The Social Security Administration has determined that "the decisionmaker must also establish the onset date of disability," which may be "critical" in "many claims." SSR 83-20, 1983 WL 31249, at *1 (1983). The relevant factors "include the individual's allegation, the work history, and the medical evidence." Id. Accord Karlix v. Barnhart, 457 F.3d 742, 747 (8th Cir. 2006). And with respect to disabilities of a non-traumatic origin such as those here, "[a] change in the alleged onset date may be provided in a Form SSA-5002 . . ., a letter, another

document, or the claimant's testimony at a hearing." SSR 83-20, at *2.[3]

Here, the ALJ not only did not amend the onset date, he failed to address in his decision the fact that Plaintiff had sought such an amendment, much less his basis for not amending the date. This omission cannot be deemed harmless error as it appears clear that the requested change was made as a result of the recognition that his substance abuse during the bulk of Claimant's originally-alleged period of disability, that is, from December 31, 2001 until March 1, 2007, could likely preclude an award of benefits for that period. With respect to the period after March 1, 2007, however, it is less clear that a denial of benefits would be likely. But the ALJ's decision, by neither recognizing the amended onset date nor analyzing the two periods separately, entirely fails to account for this difference.

Claimant argues that even if his substance abuse would have precluded a finding of disability from 2001 to March 2007, he would have been found disabled from March 1, 2007 onward as he had stopped using drugs at that time. Claimant argues that the evidence of record "support[s] a finding that [his] disability remained after he stopped using." (Doc. No. 14, at 23.) On remand, the ALJ must address Claimant's request to amend the onset date and explain his decision. This issue is key because if the ALJ finds that Claimant did stop using drugs as of March 2007, "[d]etermining whether a claimant would still be disabled if he or she stopped [abusing substances] is, of course, simpler if the claimant actually has stopped." Pettit, 218 F.3d at 903. If the ALJ finds that Claimant had not stopped in March 2007, the determination whether Claimant would still be disabled absent the "the effects of the substance abuse disorders"

will necessarily be hypothetical and therefore more difficult than the same task

_____

[3] The Court is aware of no authority precluding a claimant from requesting such an amendment by letter after the hearing but before the ALJ issues his decision, as Claimant did here.

when the claimant has stopped. Even though the task is difficult, the ALJ must develop a full and fair record and support his conclusion with substantial evidence on this point just as he would on any other.

Brueggemann, 348 F.3d at 694-95.[4]

## 2. Substance Abuse Analysis

Claimant also contends that the ALJ failed to properly apply the law regarding substance abuse.[5] The Court agrees. The ALJ did identify, at the outset, that one of the issues was whether a substance abuse disorder "is a contributing factor material to the determination of disability under section 223(d)(2) and 1614(a)(3)(j) of the Social Security Act." (Admin. R. at 15.) The ALJ also correctly stated the standard. (Id. at 17.) But it is far from clear that he then actually applied that standard correctly to the particular facts at issue. At the conclusion of his introductory "Issues" section, he stated:

> After careful consideration of all the evidence, the undersigned [ALJ] concludes that the claimant is under a disability, but that a substance use disorders [sic] is a contributing factor material to the determination of disability. Accordingly, the claimant has not been disabled under the Social Security Act at any time from the alleged onset date through the date of this decision.

---

[4]    It is not entirely clear whether the ALJ actually found that Claimant ceased his substance abuse in March 2007. The ALJ simply noted Claimant's testimony that "that he has been stable on the methadone and medication regimen since his outpatient treatment at Fairview Hospital drug and therapy program in April and May 2007. He reports sobriety since 2007." (Admin. R. at 20.) In contrast, the Commissioner contends that there is evidence that Claimant continued using drugs after 2007. (Doc. No. 25, at 8.) At present, the Court does not conclude that the record either necessarily compels or rejects a proper finding that Claimant's substance abuse ceased in March 2007. On remand, however, the ALJ must expressly either adhere to or reject these apparent findings of a March 2007 cessation date. Moreover, the ALJ, after also deciding whether to amend the onset date to March 2007 as well, must then properly incorporate whatever findings he makes into the Brueggemann / Pettit framework.

[5]    Claimant suggests that the ALJ did not recognize that the issue is governed principally by 20 C.F.R. § 404.1535. Although the ALJ did not expressly cite that particular regulation in the portion of his decision applying the law to the particular facts of this case, the ALJ did cite that regulation in his initial "Applicable Law" section. (Admin. R. at 17.)

(Id. at 16.)  But any such conclusion should have followed the standard five-step analysis.

Moreover, the Court cannot conclude that this problem is simply one of form (merely the apparent structure of the decision), because the decision reflects that the ALJ was evaluating the impact of Claimant's substance abuse on the ultimate issue of disability throughout the entire five-step process.  As discussed above, when applying that five-step process, the issue initially "concerns strictly symptoms, not causes."  Brueggemann, 348 F.3d at 694.  Only after determining, based on all of the symptoms and without regard to their cause, that a claimant is disabled, should the ALJ then consider whether substance abuse was a cause of the disability.

For example, early in the Findings and Conclusions section of the decision, when addressing whether Claimant had an impairment or combination of impairments that equal one of the listed impairments, the ALJ noted that "[t]herapy reports from 2004 and 2005 indicate that his goals were to stay sober and avoid self-defeating behaviors and to find a job.  The fact that he was told by his therapists and doctors to look for a job, does not suggest disability."  (Id. at 18.)  The ALJ also noted that a May 2006 report "showed that as long as the claimant remained sober his condition would be stable."  (Id.)

The same error undermines the ALJ's assessment of Claimant's residual functional capacity.  The ALJ discounted Claimant's assertion that he was unable "to perform all work due to depression and anxiety," noting that Claimant "was abusing chemicals during the periods he worked gainfully."  (Id. at 20.)  The ALJ also found the Claimant's statements regarding the limiting effect of his symptoms were "not credible to the extent they are inconsistent with" the ALJ's RFC finding, explaining that Claimant's "inconsistent compliance with the prescribed medication and the excessive abuse of drugs and alcohol during periods of non-compliance does not bolster his credibility."  (Id. at 21.)  Moreover, the ALJ concluded that "the claimant's own

doctor recognizes his ability to work when clean and sober." (Id.) The ALJ further stated that "[a]fter reviewing the objective medical evidence, the undersigned concludes that the claimant's primary limitations were due to a long term past history of poor choice and lifestyle issues, with polysubstance and alcohol dependence." (Id. at 22.) In short, it is clear that the ALJ failed to follow the strict procedural framework as outlined in Brueggemann, as he was evaluating whether Claimant's substance abuse was the cause of his alleged disability from the outset of his analysis.

The Court also notes that it is unclear whether the ALJ considered Claimant's current participation in a Methadone program to constitute substance abuse that could preclude an award of benefits. At the hearing, the neutral medical examiner testified that Claimant, despite having stopped using "street drugs" some 18 months before, "is diagnosed with polysubstance dependence" because he was being treated with Methadone. (Admin R. at 41.) The ALJ seemed to agree. (Id.) In his decision, however, he notes that Claimant has been sober since 2007 (although due to his Methadone treatment), suggesting that he was not substance-dependent. (Id. at 20 (noting "sobriety since 2007), & 24 (noting "ongoing sobriety").) On remand, the ALJ should address this issue and explain his decision.

In sum, the ALJ erred in the procedure he used to evaluate a claimant who alleges mental impairments and also suffers from substance abuse. On remand, the ALJ should address the fact that Claimant was diagnosed as suffering from depression and anxiety as well as substance abuse. But because substance abuse requires a separate additional step beyond the standard five-step analysis, the ALJ should ensure that he adheres to the analytic procedure delineated in Brueggemann. The ALJ should consider any possible causal interaction between these types of impairments, that is, whether and to what extent Claimant's depression or anxiety might have

caused his substance abuse, or whether to what extent substance abuse caused or exacerbated his

depression or anxiety.  See Pettit v. Apfel, 218 F.3d 901, 902-04 (8th Cir. 2000) (addressing

relationship between alcoholism and depression).

>    **D.      The ALJ Failed To Adequately Explain Why He Gave The Greatest Weight
>             To The Opinion of the Non-Treating Neutral Medical Expert and Also The
>             Weight He Accorded The Medical Opinions of Treating Sources**

Plaintiff also contends that the ALJ's assessment of his RFC does not satisfy the relevant

"substantial evidence" standard because the evidence relied upon "does not rise to the level of

'some medical evidence,'" as the ALJ based his RFC finding "mainly on the opinion of a non-

treating, non-examining ME, Dr. Stevens."  (Doc. No. 14, at 14.)  Plaintiff further notes that the

ALJ relied substantially on the "opinion of Dr. Karayusuf, a consultative examiner."  (Id.)  Thus,

the ALJ "did not give sufficient weight to the treating doctor opinion of Dr. Ebrahimi."  (Id. at

16.)[6]

---

[6]      Claimant separately argues that the ALJ failed to fulfill his duty to fully and fairly
develop the record by not investigating Dr. Ebrahimi's opinions further.  (Doc. No. 14, at 15-19.)
This argument is simply part of his argument that the ALJ failed to accord the opinion of Dr.
Ebrahimi its appropriate weight.  (Id. at 17-18 (contending that ALJ should have considered (1)
Dr. Ebrahimi's responses in the November 2008 Questionnaire that Claimant submitted after the
hearing but before the ALJ issued his decision, and (2) his opinion on Claimant's mental RFC).)
As explained by the Social Security Administration,

>    in some instances, additional development required by a case–for example, to
>    obtain more evidence or to clarify reported clinical signs or laboratory
>    findings–may provide the requisite support for a treating source's medical opinion
>    that at first appeared to be lacking or may reconcile what at first appeared to be an
>    inconsistency between a treating source's medical opinion and the other
>    substantial evidence in the case record.

SSR 96-2P, 1996 WL 374188, *4 (July 2, 1996).  The ALJ "may need to consult a medical
expert to gain more insight into what the clinical signs and laboratory findings signify in order to
decide whether a medical opinion is well-supported or whether it is not inconsistent with other
substantial evidence in the case record."  Id.  On remand, the ALJ, in re-assessing what weight
should be given to Dr. Ebrahimi's opinion, shall ensure that he has all of the necessary evidence
of record with respect to Dr. Ebrahimi's opinions in order to make that determination.

Here, the ALJ gave "greatest weight" to the opinion of the neutral medical expert, Mary Louise Stevens, Ph.D., and therefore adopted her conclusions, "because she has medical expertise in the treatment and care of mental conditions and she has knowledge of the disability program and she had the opportunity to review the objective medical evidence and hear the testimony of the claimant." (Admin. R. at 19.) But the ALJ made no express findings as to whether Dr. Stevens's opinions were consistent with the evidence as a whole.[7] And the ALJ, while clearly recognizing that Dr. Ebrahimi was treating Claimant since March 2007, made no express finding regarding the weight he accorded to the opinion of Dr. Ebrahimi. (Id. at 21.) Dr. Ebrahimi's March 2007 Diagnostic Assessment, for example, concluded that Claimant suffered from "Major Depressive Disorder–Recurrent, Chronic with Anxious Features" but does not mention substance abuse. (Admin. R. at 377-78.)

The Administration has made a commitment, however, that it "will always give good reasons in [the] notice of determination or decision for the weight we give [a claimant's] treating source's opinion." 20 C.F.R. § 404.1527(d)(2). Accord SSR 96-2P, 1996 WL 374188, *5. If the ALJ denies benefits, his "decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2P, 1996 WL 374188, *5.

An ALJ should generally accord "substantial weight" to a treating physician's opinion. E.g. Ghant v. Bowen, 930 F.2d, 633, 639 (8th Cir. 1991). Such an opinion "should not ordinarily

---

[7]     Nevertheless, based on Dr. Stevens's opinion, the ALJ partially rejected Dr. Karayusuf's recommendations regarding Claimant's limitation to unskilled, simple tasks. (Admin. R. at 21.)

be disregarded" and "[i]n fact, it should be granted controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." Cunningham v. Apfel, 222 F.3d 496, 502 (8th Cir. 2000) (citing Kelley v. Callahan, 133 F.3d 583, 589 (8th Cir. 1998)); accord SSR 96-2P, 1996 WL 374188 (July 2, 1996). "By contrast, '[t]he opinion of a consulting physician who examines a claimant once or not at all does not generally constitute substantial evidence.'" Cunningham, 222 F.3d at 502 (quoting Kelley, 133 F.3d at 589). Finally, the Administration "generally give[s] more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." 20 C.F.R. § 404.1527(d)(5).

On remand, the ALJ must assess Dr. Ebrahimi's opinion, determine whether to accord it the greatest weight, and, whatever weight he accords to that opinion, explain his decision. This issue is of particular importance if the ALJ decides to amend Claimant's onset date to March 2007, as that is the time-frame at which Dr. Ebrahimi began treating Claimant, thereby rendering him the main, if not sole, treating source during the applicable period of alleged disability.

**E.     Other Errors of Law**

The Court also notes other errors of law in the ALJ's decision. First, the ALJ frequently noted–apparently as part of his premature finding that Claimant was "not disabled"–that Claimant was still engaging in certain "daily activities" and even enjoying some of them. (Admin. R. at 19 (noting that Claimant regularly handles chores and "enjoys surfing the internet"), 19 (noting he "lives independently"), 21 (noting he "really enjoys working on the computer"), & 22 (noting "daily activities are inconsistent with total disability").)

But "it is well-settled law that 'a claimant need not prove she is bedridden or completely helpless to be found disabled.'" Reed v. Barnhart, 399 F.3d 917, 923 (8th Cir. 2005) (noting that

claimant's "anxiety and panic attacks, difficulty sleeping, loss of concentration, nightmares and

flashbacks and discomfort around strangers . . . hardly seems inconsistent with her ability to

perform such routine and simple daily living activities 'to any degree'").  The Eighth Circuit

"has repeatedly stated that a person's ability to engage in personal activities such as cooking,

cleaning, and hobbies does not constitute substantial evidence that he or she has the functional

capacity to engage in substantial gainful activity."  <u>Kelley v. Callahan</u>, 133 F.3d 583, 588-89 (8th

Cir. 1998).  Thus, there is no necessary inconsistency in a record that discloses both (1)

diagnoses of depression and anxiety, and (2) a claimant's ability to engage in certain tasks or

even to enjoy certain activities.  On remand, the ALJ shall refrain from rejecting a claim of

disability due to depression or anxiety based simply on the ability to engage in "daily activities."

Second, the ALJ noted that Claimant's "symptoms wax and wane depending on his

medical compliance."  (Admin. R. at 21.)[8]  But not only is there nothing inconsistent with the

---

[8]      With respect to Claimant's medication compliance, the ALJ found that the
"inconsistent compliance with the prescribed medication and the excessive abuse of drugs and
alcohol during periods of non-compliance does not bolster his credibility."  (Admin. R. at 21.)
But the Eighth Circuit has explained that  "federal courts have recognized a mentally ill person's
noncompliance with psychiatric medications can be, and usually is, the 'result of [the] mental
impairment [itself] and, therefore, neither willful nor without a justifiable excuse.'"  <u>Pate-Fires v.</u>
<u>Astrue</u>, 564 F.3d 935, 945 (8th Cir. 2009) (citations omitted).  "Courts considering whether a
good reason supports a claimant's failure to comply with prescribed treatment have recognized
psychological and emotional difficulties may deprive a claimant of 'the rationality to decide
whether to continue treatment or medication.'"  <u>Id.</u>
       Nevertheless, the ALJ also frequently noted that Claimant responded favorably to his
medications.  (Admin. R. at 20 (noting Claimant's stability while "on the methadone and
medication regimen"), 21 (noting he "is stable with the prescribed medications"), 22 ("The
successful treatment with medications does not support disability."), & 23-24 (stating that "the
conservative and successful medical treatment with ongoing sobriety does not support [any
further] significant reduction" in his RFC.)  But "doing well for the purposes of a treatment
program has no necessary relation to a claimant's ability to work or to her work-related
functional capacity."  <u>Hutsell v. Massanari</u>, 259 F.3d 707, 711 (8th Cir. 2001) (stating that ALJ
"erroneously relied too heavily on indications in the medical record that [claimant] was 'doing
well'").
       The Court is not rejecting any proper finding that Claimant was not disabled.  But on

ability to engage in certain activities while suffering from a mental illness, the nature of mental illness is that the symptoms are not consistent over time. As the Eighth Circuit has explained, it is "mindful" that

> "'[i]t is inherent in psychotic illnesses that periods of remission will occur,'" and that such remission does not mean that the disability has ceased. Indeed, "one characteristic of mental illness is the presence of occasional symptom-free periods." Although the mere existence of symptom-free periods may negate a finding of disability when a physical ailment is alleged, symptom-free intervals do not necessarily compel such a finding when a mental disorder is the basis of a claim. Unlike many physical impairments, it is extremely difficult to predict the course of mental illness. Symptom-free intervals and brief remissions are generally of uncertain duration and marked by the impending possibility of relapse.

Andler v. Chater, 100 F.3d 1389, 1393 (8th Cir. 1996) (internal citations omitted).

### F.      Deficient Hypothetical Question

Finally, Plaintiff thus argues that the ALJ failed to include all of his severe impairments and limitations in the hypothetical question posed to the vocational expert, thereby rendering that expert's testimony incapable of being substantial evidence supporting a denial of benefits. (Doc. No. 14, at 19-20.) "It has long been the rule in this circuit that a hypothetical question posed to an ALJ must contain all of claimant's impairments that are supported by the record":

> Testimony from a vocational expert constitutes substantial evidence only when based on a properly phrased hypothetical question. When a hypothetical question does not encompass all relevant impairments, the vocational expert's testimony does not constitute substantial evidence. Thus, the ALJ's hypothetical question must include those impairments that the ALJ finds are substantially supported by the record as a whole.

Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996). On remand, the ALJ shall incorporate into the hypothetical question all of the impairments he finds supported in the record.

---

remand, the ALJ shall refrain from according inappropriate weight to evidence that Claimant failed to consistently maintain his pharmaceutical treatment or to evidence that he responds well to his course of treatment.

### III.    CONCLUSION

After reviewing the entire record, the Court concludes that the ALJ erred as a matter of law with respect to two procedural issues: (1) his failure to assess Claimant's proposed amendment of the onset date of his alleged disability; and (2) his failure to adhere to the procedure delineated in <u>Brueggemann</u> for addressing claims of disability where a claimant has a history of substance abuse. In addition, other errors of law occurred with respect to the legal standards for evaluating evidence of mental impairments. Because these errors cannot be deemed merely harmless, the case should be remanded for further proceedings consistent with this opinion. The Court presently takes no position on the substantive merits, however, of Claimant's ultimate entitlement to benefits.

### IV.    RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein, IT IS HEREBY RECOMMENDED that:

1.    Plaintiff's motion for summary judgment [Doc. No. 13] be **GRANTED**;

2.    Defendant's motion for summary judgment [Doc. No. 24] be **DENIED**; and

3.    This action be **REMANDED** for further proceedings consistent with this opinion.


Dated:  December 23, 2010                    s/Franklin L. Noel
                                             FRANKLIN L. NOEL
                                             United States Magistrate Judge


Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and serving all parties by **January 10, 2011**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.